UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES ERICH LEROY,                                                              **DECISION**
                                        Plaintiff,                                        **and**
              v.                                                                              **ORDER**

AMEDISYS HOLDING LLC
*doing business as*                                                    **21-CV-105JLS(LGF)**
Amedisys Home Health Services,

                                        Defendant.
_____

APPEARANCES:           JAMES D. HARTT, ESQ.
                                    Attorney for Plaintiff
                                    6 North Main street
                                    Suite 200F
                                    Fairport, New York  14450

                                    FISHER & PHILLIPS LLP
                                    Attorneys for Defendant
                                    DAVID B. LICHTENBERG, of Counsel
                                    430 Mountain Avenue
                                    Murray Hill, New Jersey   07973


        Plaintiff commenced this action by Complaint filed January 21, 2021 alleging

violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a) *et seq.*

("the ADA"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981.  Plaintiff received a

favorable disposition of Plaintiff's administrative complaint filed with the N.Y. Division of

Human Rights ("NYDHR" or "DHR") on December 24, 2019, and a right to sue letter

from the NYDHR on July 29, 2020, and the EEOC on October 2, 2020.  Dkt. 12 at 11.

Specifically, Plaintiff alleges that after satisfactory employment with Defendant as a

physical therapist, commencing in 2003, Defendant terminated Plaintiff in 2019 upon

discovering that Plaintiff was then suffering from a brain tumor requiring a reasonable

accommodation which Defendant refused to provide.  This case was referred to the undersigned by Hon. John L. Sinatra, Jr. for all pretrial mattes on March 23, 2021 (Dkt. 7).

By papers filed March 22, 2021, Defendant moved, pursuant to the Federal Arbitration Act § 2 ("FAA __") to compel arbitration and, pursuant to FAA § 3, to stay further proceedings in the instant action (Dkt. 5) ("Defendant's motion").  Motions to compel and to stay under FAA §§ 2 and 3, are non-dispositive.  *See Manley v. Diversified Recovery Bureau, LLC*, 2021 WL 4324412, at *1 n. 1 (W.D.N.Y. Sept. 23, 2021) (citing *Kiewit Constructors, Inc. v. Franbilt, Inc.*, 2007 WL 2461919, at *1 n. 1 (W.D.N.Y. Aug. 24, 2007) (citing *Herko v. Metropolitan Life Ins. Co.,* 978 F.Supp. 141, 142 n.1 (W.D.N.Y. 1997))).

Arbitration agreements are enforceable in federal court pursuant to § 2 of the FAA.  *See Manley,* 2021 WL 4324412, at *2 (citing *Salerno v. Credit One Bank, NA*, 2015 WL 6554977, at *3 (W.D.N.Y. Oct. 29, 2015)), and "arbitration is strongly favored by federal courts."  *Manley*, 2021 WL 4324412, at *2 (citing *Moses v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *State of New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)).  Whether a federal claim is subject to arbitration depends on whether there exists a valid agreement to arbitrate determined by reference to state contract law, *Salerno v. Credit One Bank, NA*, 2015 WL 6554977  at * 4 (W.D.N.Y. Oct. 29, 2015) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995))), whether the federal claim at issue is within the scope of the agreement, *Abdullayeva v. Attending Homecare Servs, LLC*, 928 F.3d 218, 212-22 (2d Cir. 2019), and whether the claim has been

excluded from arbitration as a matter of Congressional policy.  *Id.*  Where, however, the party seeking to compel arbitration has engaged in judicial litigation of the matter or delayed in compelling arbitration, such party may be found to have waived arbitration warranting denial of a motion to compel arbitration.  *See Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 492 (2d Cir. 2010) (defendant defaulted and waived right to compel arbitration by proceeding to litigate in district court for eight months while plaintiff engaged in discovery and motion practice but defendant never appeared, defended itself or sought to compel arbitration).  Here, Plaintiff does not dispute that Plaintiff's ADA claim, *i.e.*, wrongful termination, is within the scope of the putative arbitration agreement set forth by Defendant.  *See* Dkt. 11 at 6 ("Plaintiff does not dispute that the agreement's language contemplated that post-termination discrimination claims were subject to its provision.")  Nor does Plaintiff dispute that Plaintiff's ADA claim is arbitrable.  *Id.* (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 299 n. 1 (2002) (ADA claim subject to arbitration agreement)); *see also Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 Fed.Appx. 19, 22-23 (2d Cir. 2016) (arbitration agreement in employment contract was enforceable with regard to ADA claim); *Germosen v. ABM Indus. Corp*, 2014 WL 4211347, at *6 (S.D.N.Y. Aug. 26, 2014) (ADA claims arbitrable under FAA) (citing cases).  Instead, Plaintiff opposes Defendant's motion on two grounds: (1) Plaintiff did not execute an agreement to arbitrate as Defendant contends, and (2) Defendant's undue delay in requesting arbitration amounts to laches or estoppel or a waiver of arbitration, assuming the court finds the putative arbitration agreement is otherwise enforceable.  Dkt. 11 at 8.

Plaintiff's Acceptance of the DRA

As to Plaintiff's first objection, Plaintiff contends Plaintiff did not affirmatively acknowledge receipt of Defendant's new arbitration program (the "Dispute Resolution Agreement" or "DRA") which included the arbitration agreement as promulgated by Defendant in 2013 because the e-mail signature relied on by Defendant to demonstrate Plaintiff received the document misspelled Plaintiff's name, which Plaintiff maintains demonstrates it could not have been entered into Defendant's e-mail system by Plaintiff as Defendant contends Defendant's digital e-mail records indicate.  Dkt. 11 at 4-5. Plaintiff further claims the time of Plaintiff's alleged acknowledgement was in the afternoon, 2:33 p.m., on August 13, 2013, a time when Plaintiff would not typically be engaged in providing services to Defendant.  *Id.* at 5.  *See also* Dkt. 11 Exh. 1 (Declaration of James Erich LeRoy) ("LeRoy Declaration").  According to Plaintiff, these discrepancies demonstrate Defendant's failure to meet Defendant's burden of establishing Plaintiff knowingly agreed to Defendant's new arbitration (DRA) program at that time.  *Id.* at 5.  Upon acknowledging receipt of the DRA, the employee was advised in a "pop-up" that unless the employee filed an opt-out form ("Opt-Out form") with Amedisys within 30 days, the employee would be bound by the DRA including the arbitration agreement.  Declaration of T. Terrell West, Amedisys Director of Talent Operations & Compliance ("West Declaration")  Dkt. 5-2 ¶ 6 (referencing Exh. D at 4, 12).  Plaintiff, however, does not dispute that according to Defendant's computerized records of Plaintiff's e-mails at that time, and assuming Plaintiff did in fact as Defendant's records indicate, Dkt. 5-2 at 20-21, receive the DRA on August 13, 2013, at 10:48 a.m., Dkt. 5-2 at 10, and acknowledged receipt at 2:33 p.m., Dkt. 5-2 at 20,

Plaintiff failed to opt-out of the arbitration program by filing within 30 days of receipt of the DRA an Opt-Out form as the DRA provided, Dkt. 5-2 at 12, thereby establishing Plaintiff's assent to the arbitration agreement.  Dkt. 11 (*passim*).  Defendant initially e-mailed the DRA program to Plaintiff on August 6, 2013 at 1:30 p.m., Dkt. 5-2 at 8, requesting Plaintiff acknowledge its receipt but Plaintiff failed to do so at that time.  Dkt. 5-2 ¶¶ 4, 5 (West Declaration necessitating Defendant's second notice to Plaintiff on August 13, 2013).

Where there is a genuine dispute of material fact as to whether a party executed an arbitration agreement, the court must resolve the issue at a trial.  *See Hines v. Overstock.com, Inc.*, 380 Fed.Appx. 22, 24 (2d Cir. 2010) (the party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue'").  *See also D'Antuono v. Serv. Road Corp.*, 789 F.Supp.2d 308, 319 (D.Conn. 2011) (citing *DuBois v. Macy's East, Inc.*, 338 Fed. Appx. 32, 33 (2d Cir. 2009) (party seeking to compel arbitration must show entitlement to arbitration by evidence that opposing party agreed to arbitration)).  To avoid arbitration, the party opposing arbitration must submit evidentiary facts showing a genuine fact dispute that requires trial as required by FAA § 4.  *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995).  Trial may be avoided where, considering the admissible evidence and drawing all reasonable inferences in favor of the moving party, the court may determine the issue as a matter of law based on the undisputed facts in the record. *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d

164, 171 (2d Cir. 2011) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

Here, the record establishes that in August 2013, Defendant e-mailed to all of its employees, including Plaintiff, a Dispute Resolution Agreement ("DRA") containing the arbitration agreement at issue which could be received and reviewed by each employee "using their unique username and password."  Dkt. 5-2 ¶ 3 (West Declaration).  No Amedisys employee could access another employee's e-mail account unless the affected employee "shared their login and password."  *Id*.  Mr. West further avers that in its first notice to employees, including Plaintiff, on August 6, 2013, Defendant advised that the DRA was an important policy affecting the employee's "legal rights" and to acknowledge receipt of the DRA by "click[ing]," *id*. ¶ 4, "on the link" to receive it.  *Id*. ¶ 5. Upon acknowledging receipt of the DRA the employee was directed to other information concerning the DRA including that an employee was not required to agree to the Defendant's new arbitration policy, but was required to send an Opt-Out election message to Defendant within 30-days that would, if done, retain the employee's existing right to seek judicial resolution of any disputes with the Defendant relating to employment with Defendant.  Dkt. 5-2 at 28 Section 9.  As relevant, the DRA provided that it "applied to any dispute arising out of or related to Employee's employment with Amedisys or termination of employment regardless of its date of accrual and survives after the employment relationship terminates."  Dkt. 5-2 at 23 (Section 1).  The DRA also emphasized an employee's exercise of the Opt-Out provision would not adversely affect the employee's status.  Dkt. 5-2 at 29 (Sec. 10).  Defendant's review of its computerized filing system applicable to employee e-mail communications with the

company at the relevant time, shows that Plaintiff acknowledged Plaintiff received the August 13, 2013 follow-up e-mail communication to Plaintiff, including the DRA, *see* Dkt. 5-2 at 10, using Plaintiff's Amedisys username of james.leroy@amedisys.com" as Plaintiff's company e-mail address.  Dkt. 5-2 ¶ 5, on August 13, 2013 at 2:33 pm.  (Declaration of Larry Bracy, Amedisys's Sharepoint Architect who was familiar with the operation and record-keeping capabilities of Defendant's digital records including employee e-mails concerning the 2013 DRA promulgation) ("Bracy Declaration").  *See also* Dkt. 5-2 Exh. 1 (Print-out of record of acknowledgment of receipt of August 13, 2013 DRA documents by "james.leroy,"  at 2:33 pm and "created by james leroy." Exhibit 1 also includes a printed statement, Dkt. 5-2 at 21, labelled The Amedisys Arbitration Agreement Form, stating recipient "james.leroy" (1) acknowledges by clicking below receipt of the DRA material, and (2) that "unless upon opt out of the Dispute Resolution Agreement within 30 days of today's date, you will be bound by it, which will affect your legal rights."  The form was electronically signed by "james.leroy" dated August 13, 2013 with the words "Acknowledge" included in a shaded box area.  Dkt. 5-2 at 21.  Both the West and Bracy Declarations and the attached exhibits represent admissible evidence based on personal knowledge, *see* Fed.R.Evid. 602, and as business records.  *See* Fed.R.Evid. 803(6)(B).  Plaintiff does not argue otherwise.

Significantly, Plaintiff did not contest he received these e-mail communications, nor that he was assigned and used an e-mail electronic signature and address of "james.leroy" with which to utilize the company's e-mail communication system.  *See* LeRoy Declaration, Dkt. 11-2 Exh. 1 ¶ 1 ("I deny any acknowledgment of any signature") (underlining added).  Rather, Plaintiff asserts the electronic signature

appearing on Defendant's DRA document as e-mailed on August 13, 2012 represents a misspelling of his name, Dkt. 11-2 LeRoy Declaration ¶ 2, presumably that Plaintiff's surname should be spelled LeRoy, not leroy.[1]  Dkt. 11 at 6.  Significantly, Plaintiff fails to deny that he in fact used the "james.leroy" username and company e-mail address in connection with using  Defendant's internal e-mail communication system including the Defendant's August 2013 DRA e-mails as Defendant avers.  Given the plethora of Defendant's electronically stored business e-mail records constituting admissible evidence pertaining to Plaintiff and the August 2013 DRA employee e-mail communications pertaining to Plaintiff's contention that such alleged discrepancy constitutes "circumstantial evidence," Dkt. 11 at 6, that he did not "sign," *id*., the DRA Acknowledgement form on August 13, 2013, as Defendant's records demonstrate, because it contained a misspelling of his surname LeRoy strains credulity and as such is insufficient to raise a material issue of fact on this issue.  Pointedly, as Mr. Bracey explains, and Plaintiff does not deny, upon opening the acknowledgment form that accompanied the DRA e-mail to Plaintiff on August 13, 2013 and clicking on the "Acknowledge" button appearing on Plaintiff's computer screen, "the acknowledgment form automatically populated the electronic signature line with that employee's unique username . . ..  As such, an employee was not able to modify the contents of the electronic signature line . . .."  Bracey Declaration ¶ 4.  Therefore, Plaintiff's contention that he did not personally acknowledge receipt of the DRA as e-mailed to him, including its Opt-Out, is invalid because it lacks capital letters in his first and last names lacks a factual basis.

---

[1]  A careful reading of Plaintiff's Declaration does not provide any other explanation precisely explaining Plaintiff's meaning that his "last name was spelled incorrect."  LeRoy Declaration ¶ 2.

Nor is there any merit in Plaintiff's assertion that because he would not ordinarily be engaged in providing Amedisys services in the afternoon hours, *i.e.,* at 2:33 p.m., he could not have actually made the electronic-mail entries as Defendant's record indicates.  Courts accept records showing delivery of e-mailed documents to an e-mail address, *see Charter Communications, Inc. v. Garfin*, 2021 WL 694549, at *9 n 6 (S.D.N.Y. Feb. 23, 2021) (under New York law, there is a rebuttable presumption that a party has received an e-mail sent to the party's work e-mail address in accordance with regular office procedures (citing cases)); and that an employee received by e-mail an arbitration agreement which employee failed to opt-out from thus assenting to the arbitration agreement as communicated by e-mail to the employee.  *See Lockette v. Morgan Stanley*, 2018 WL 4778920, at *3-4 (S.D.N.Y. Oct. 3, 2018) (holding the plaintiff in an employment discrimination case agreed to arbitrate where it was presumed under New York law that the plaintiff received via an e-mail sent to the plaintiff's work e-mail address, a presumption the plaintiff failed to rebut with evidence, and accessed by the plaintiff's user name an arbitration agreement, and assented to its terms by not opting out).  Courts also hold a party's failure to recall the execution of the disputed arbitration agreement whether in hard copy or electronic form is insufficient to avoid arbitration. *See Padro v. Citibank, N.A.*, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 17, 2015) (rejecting plaintiff's argument that plaintiff did not recall having signed any arbitration related document); *Gonder v. Dollar Tree Stores, Inc.*, 144 F.Supp.3d 522, 528 (S.D.N.Y. 2015) ("A mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid – especially in the absence of any evidence the document was fabricated.")  Significantly,

9

Plaintiff does not assert any other person had access to his e-mail account with Amedisys, nor does Plaintiff assert Defendant's electronic documents are fabricated; rather, Plaintiff's assertion that he did not execute the acknowledgment form "is made without the support of a shred of evidence that might cast doubt on the authenticity of the various exhibits marshaled by defendants in support of their contrary position . . . [and] '[n]othing in the record other than [plaintiff's] bald assertion to the contrary in his opposition' suggested it was invalid." *Perez v. Ruby Tuesday*, 2019 WL 355637, at *4 (N.D.N.Y. Jan. 28, 2019) (quoting *Gonder*, 144 F.Supp.3d at 529).  Thus, it is irrelevant whether at 2:33 p.m. on August 13, 2013,  Plaintiff was actually engaged in providing services on behalf of Defendant when Plaintiff acknowledged receipt of the DRA and its Opt-Out provision.  In sum, Plaintiff's assertion that the so-called electronic username, james.leroy, constitutes a misspelling supporting that Plaintiff himself did not make the August 13, 2013 e-mail DRA entries, which Defendant's uncontroverted business records fully substantiate, fails to create a material issue of fact requiring trial on whether Plaintiff agreed to the arbitration agreement provided in the August 2013 DRA.[2] On this record, the evidence fully supports finding Plaintiff assented to the DRA and the arbitration provision as well as the Opt-Out.

---

[2] The court notes that in two other cases in which Defendant was sued and moved to compel arbitration and on which Defendant relies, Dkt. 5-1 at 10, other courts have found arbitration was supported by the electronic delivery and acceptance of the same DRA at issue in the instant case, including *Knight v. Amedisys Holding, LLC*, 2016 WL 566, 1227, at *3 (W.D.Ky. Sept. 28, 2016) ("Because [the plaintiff] clicked the acknowledgment form to indicate that she received and understood the materials, and she did not opt out of the Agreement, [the plaintiff] manifested her assent to the Agreement, including the agreement to arbitrate."); *Langlois v. Amedisys, Inc.*, 2016 WL 4059670, at *2 (M.D. La. July 27, 2016) (granting the defendant's motion to compel arbitration where it was "undisputed" that the plaintiff acknowledged receipt of an email directing her to a webpage with access to the defendant employer's arbitration program materials, for which the plaintiff provided an electronic signature acknowledging receipt, and did not elect to opt out of the program in accordance with the program's procedures).

Finally, Plaintiff asserts other co-employees do not recall receiving any DRA information, LeRoy Declaration, Dkt. 11-2 ¶ 2, and that such employees would execute affidavits so stating. *Id.*  However, as discussed, the issue is what Plaintiff received from Defendant and whether Plaintiff, not his co-employees, received and/or failed to acknowledge receipt of the DRA in August 2013, and Plaintiff does not include any such averments.  To the extent that Plaintiff's assertion was intended to imply that the DRA and Defendant's relevant e-mail records pertaining to Plaintiff represent fabricated documents, the assertion is inadmissible hearsay, and Plaintiff provides nothing to suggest they lack authenticity, merely because his alleged co-workers do not recall receiving them.  That Plaintiff and his co-workers cannot recall receiving the DRA and may not have taken the time to actually review, *i.e.*, read the DRA materials and, particularly, the Opt-Out, does not avoid finding sufficient evidence of Plaintiff's assent. *See Padro*, 2015 WL 1802132, at *5 ("Parties are charged with knowing and understanding the terms of written agreements to which they assent.") (citing *Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149-50 (2d Cir. 2004) ("party . . . conclusively presumed to know contents" of written contract accepted by party)).

Additionally, while not disputed by Plaintiff, under New York law, the failure to timely opt-out of a provision in an offer creates mutual promises to perform constituting sufficient consideration such that the contract is not illusory and is thus enforceable. *See Hellenic Lines, Ltd. v. Louis Dreyfuss Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) (holding a party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"); *In re 114 Tenth Ave. Assoc., Inc.*, 441 B.R. 416, 428 (S.D.N.Y. 2010) ("Normally, if a promise is vague and indefinite, or if the promisor is free

to perform it or not, as he wills, it is wholly illusory and will not be enforced." (quoting *Murphy Chem. Cor. v McKettrick*, 57 N.Y.S.2d 899, 901 (S.Ct. N.Y. Cty. 1945) ("a promise which requires an affirmative cancellation cannot be regarded as illusory whether the cancellation is for cause or otherwise; it is fixed and explicit and subject only to cancellation in a specified way"), *aff'd*, 76 N.Y.S.2d 836 (1st Dept. 1948)). Moreover, in this case, the Opt-Out, Dkt. 5-2 at 29, stated that an employee's failure to exercise the Opt-Out together with the employee's "continuation of his or her employment with Company [Amedisys] shall constitute Employee's and Company's mutual acceptance of the terms of this [DRA] Agreement."  Here, the Opt-Out 30-day period expired September 13, 2013, 30 days after Plaintiff acknowledged receipt of the DRA materials.  *See* Dkt. 5-2 at 15 (referencing Exh. 1 Dkt. 5-2 at 21).  As the record demonstrates, Plaintiff continued his employment until Plaintiff was terminated in 2019. Plaintiff's continued employment with Defendant coupled with Plaintiff's failure to timely exercise the Opt-Out supports a finding that Plaintiff and Defendant thereupon mutually agreed to the arbitration agreement described in the DRA constituting an enforceable contract under New York law.  *See Manigault v. Macy's East, LLC*, 318 Fed.Appx. 6, 8 (2d Cir. 2009) ("continued employment, without more, is sufficient to manifest assent" to arbitration agreement); *Mancilla v. ABM Indus., Inc.*, 2020 WL 4432122, at **6-7 (S.D.N.Y. July 27, 2020) (defendant employer's review of its electronic log entries established the plaintiff, when initially hired, electronically signed acknowledgment of receipt of various work documents including mutual arbitration agreement); *Padro v. Citibank, N.A.*, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 17, 2015 (under New York law, "unlike other jurisdictions" by continuing to work for employer defendant after "receiving

notice of the Employment Arbitration Policy" plaintiff manifested assent to arbitration in accordance with the policy"); *Thomas v. Public Storage, Inc.*, 957 F.Supp.2d 496, 500 (S.D.N.Y. 2013) (upon commencing employment with defendant, plaintiff, by electronically confirming receipt of employment handbook containing an arbitration agreement, and continuing to work for defendant employer, assented to arbitrate employment dispute with employer).

Laches/Estoppel

Plaintiff alternatively argues that Defendant's motion should be denied on the ground that Defendant's delay in seeking arbitration during the pendency of Plaintiff's administrative complaint to the NYDHR, commenced July 1, 2019 when Plaintiff's complaint was filed, until October 21, 2020 when the NYDHR dismissed, at Plaintiff's request, the complaint thereby permitting Plaintiff to commence the instant action, represents undue delay constituting laches barring Defendant's enforcement of the arbitration agreement.  Dkt. 11 at 7-8.  In particular, Plaintiff contends Defendant could have sought to enjoin Plaintiff from proceeding with the DHR and, although Plaintiff does not specifically state, request pursuant to FAA § 4 an order compelling Plaintiff to proceed with his claim by arbitration in accordance with the DRA.  *Id.* at 8.  FAA § 4 authorizes a party to an arbitration agreement to petition a district court for an order compelling a party who refuses to arbitrate a claim to proceed with arbitration.  *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) (holding pursuant to FAA § 4, federal courts have jurisdiction to hear a petition to compel arbitration so long as the underlying dispute between the parties "arises under" federal law); *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 161 (2d Cir. 1998) ("Section 4 of the [FAA] provides that '[a]

party aggrieved by the alleged failure . . . of another to arbitrate . . . may petition any United States district court which . . . would have jurisdiction . . . of the subject matter of a suit *arising out of the controversy between the parties*.) (quoting 9 U.S.C. § 4) (italics in original).  Instead, according to Plaintiff, Defendant cooperated in the DHR investigation resulting in a probable cause determination by DHR favorable to Plaintiff. Dkt. 11 at 8.  Plaintiff further contends that Defendant's acquiescence to the DHR proceeding constitutes an estoppel defense against Defendant's belated attempt to impose arbitration upon Plaintiff.  *Id.*  Construing Plaintiff's contentions as based on waiver, Defendant maintains Defendant has not, by cooperating in the DHR investigation, waived its right to arbitration of Plaintiff's claims in this action.  Dkt. 12 at 10-12.

The FAA's framework authorizes the federal courts to conduct only a limited review of discrete issues before compelling arbitration, leaving the resolution of all other disputes to the arbitrators. *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002)). In particular, "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'"  *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The Revised Uniform Arbitration Act of 2000 ("RUAA"), which seeks to 'incorporate the "holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act], states that an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.'"  *Id*. at 84-85 (quoting RUAA § 6(c), and comment 2.  As relevant here, "the comments add that 'in the absence of an agreement

to the contrary, issues of substantive arbitrability ... are for a court to decide and issues

of procedural arbitrability, *i.e.,* whether prerequisites such as time limits*,* notice, laches,

estoppel, and other conditions precedent to an obligation to arbitrate have been met,

are for the arbitrators to decide.'" *Id.* at 85 (quoting RUAA*,* § 6, comment 2.  Thus,

Plaintiff's asserted equitable defenses based on laches and estoppel are for the

arbitrator not the court as well as Defendant's contentions negating Defendant's delay in

seeking arbitration constituted a waiver.

    Even if Plaintiff's defenses of laches and estoppel or waiver were to be

determined by the court, they are without merit. The equitable defense of laches

requires (1) unreasonable delay in asserting a party's rights, and (2) prejudice to the

opposing party.  *See Zuckerman v. Metro Museum of Art*, 928 F.3d 186, 193 (2d Cir.

2019) (citing *Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 127, 132 (2d Cir.

2003)).  The nature of the alleged delay must also support the conclusion that it would,

in the particular circumstances, be unfair, or inequitable to the opposing party, such as

Plaintiff in this matter, to permit such an action, here arbitration, to proceed.  *See*

*Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir. 1983).  Plaintiff contends

it would be manifestly unfair and prejudicial to Plaintiff to allow Defendant to "switch

venues" after two-years of deferring to the DHR proceeding involving "significant time

and effort" (and presumably expense) on the part of Plaintiff and Defendant.  Dkt. 11 at

8.  The record does not show whether Defendant advised Plaintiff that Plaintiff's claim

as filed in July 2019 with the NYDHR was subject to the DRA arbitration agreement or

reminded Plaintiff that under the arbitration agreement, Plaintiff, as claimant, was

required to demand arbitration by notice to Defendant in accordance with Section 4 of

the DRA.  *See* Dkt. 5-2 at 25-26.  Upon such notice the parties were to proceed with arbitration before a mutually selected arbitrator or, if unable to agree, pursuant to the rules of the American Arbitration Association.  *Id.*  Any claim for arbitration was required to be filed within the statute of limitations period that would apply if the dispute had proceeded in court.  Section 4, Dkt. 5-2 at 25.  The limitation period for an ADA claim is three years.  *Volpe v. New York City Department of Education*, 195 F.Supp.3d 582, 591 (S.D.N.Y. 2016).

Here, the record is sparse and fails to support how Plaintiff will be prejudiced if arbitration, rather than a judicial proceeding such as the instant action, is invoked to resolve Plaintiff's claim.  Plaintiff has received the benefit of the DHR's favorable determination which may be admissible in both an arbitration or judicial proceeding. *See Adeniji v. New York State Off. of State Comptroller*, __ F.Supp.3d __; 2021 WL 3911373, at *7 (S.D.N.Y. Aug. 31, 2021) (finding magistrate judge, in broadly assessing the evidence, properly considered DHR's no probable cause finding, following DHR's investigation, as one of multiple factors undermining the plaintiff's claim of discrimination based on the defendant's failure to hire (citing *Cortes v. MTA New York City Transit*, 802 F.3d 226, 232 (2d Cir. 2015) ("The unreviewed findings of an agency are ... admissible as evidence under Fed.R.Evid. 803(8)(A)(iii) as 'factual findings from a legally authorized investigation' by a public office." (quoting Federal Rules of Evidence 803(8)(A)(iii)))).  Plaintiff does not state that witnesses or other evidence have become unavailable since Plaintiff's claim accrued in 2019.  Further, courts have held the two-year period between Plaintiff's DHR filing in 2019 and Defendant's motion in 2021 is not in these circumstances unreasonable.  *See New York v. Grand River Enterprises Six*

*Nations, Ltd.*, 2020 WL 7350335, at * 8 (W.D.N.Y. Dec. 15, 2020) (finding the plaintiff's

commencement of action asserting violations of New York's cigarette excise tax

scheme with respect to Indian sales of cigarettes only two years after the Second Circuit

upheld the tax scheme did not constitute laches); *Harley-Davidson, Inc. v. State of

O'Connell*, 13 F.Supp.2d 271, 282, 286-87 (N.D.N.Y. 1998) (laches defense is

supported by a delay of more than 13 years, but not by a delay of less than two years).

Moreover, in the instant case, Plaintiff's filing of the administrative claim with the DHR

did not institute a proceeding in his own name but, rather, permitted the DHR to act as a

prosecutor in pursuing an administrative enforcement action in its own name in

determining whether to initiate judicial proceedings against Defendant, and it is not until

and unless "the administrative proceeding advances to the 'public hearing' stage [that]

an NYSDHR administrative law judge becomes involved and performs an adjudicative

role."  *Charter Communications, Inc. v. Derfert*, 510 F.Supp.3d 8, 16 (W.D.N.Y. 2021)

(the FAA does not supersede an administrative agency's authority to act as prosecutor

in pursuing an enforcement action in its own name upon reviewing a discrimination

charge to determine whether to initiate judicial proceedings).  Accordingly, despite the

DHR finding probable cause based on its investigation, no public hearing was ever held

as Plaintiff requested a right to sue letter thereby dismissing the DHR administrative

complaint such that Defendant's obligation to compel arbitration did not attach until

Plaintiff filed this action on January 21, 2021.  *See Charter Communications, Inc.*, 510

F.Supp.3d at 21 (plaintiff precluded from proceeding in court until conclusion of DHR

public hearing).  Thus, Defendant could not seek affirmative equitable relief against

Plaintiff under the FAA until the DHR proceeding reached an adjudicative phase, which, at Plaintiff's election, it did not.

Estoppel requires a showing that a party has elected to proceed in a manner that should preclude the party from seeking a more favorable outcome in a subsequent proceeding.  In particular, "the party asserting judicial estoppel must show . . .[the] two prerequisite elements . . . [including] (1) that the party against whom estoppel is asserted took an inconsistent position in a prior proceeding and (ii) that the position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (quotations omitted)).  *See also Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) ("Because this doctrine [of estoppel] is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain.").  Here, Defendant did not select the DHR proceeding as a preferred device for resolving Plaintiff's claim, nor could it have prevented Plaintiff from triggering the DHR investigative and prosecutorial function, and if Plaintiff had attempted to elect enforcement of the DHR probable cause determination Defendant would undoubtedly have at that point interposed arbitration as a defense and, if necessitated by Plaintiff's failure to timely initiate arbitration in accordance with the DRA, proceeded to obtain relief under the FAA.  Thus, Defendant has not proceeded inconsistently and is not estopped from doing so in this action.

Even construing Plaintiff's asserted equitable "defenses" to Defendant's motion as a waiver of arbitration, a construction which goes beyond Plaintiff's actual contentions, Plaintiff's contentions fail.  Waiver requires the court consider (1) the time

18

lapse in the party's arbitration demand, (2) the extent to which the party engaged in litigation contrary to arbitration, and (3) the extent of prejudice to the other party if arbitration was now required.  *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001). Here, Defendant could have not elected to compel arbitration through an action pursuant to FAA § 4, *see Charter Communications, Inc.*, 510 F.Supp.3d at 20 (right to compel arbitration of employee's job discrimination claim does not attach to DHR proceeding until the proceeding reaches the adjudicatory phase) and thus Defendant was required to cooperate in the DHR investigation of Plaintiff's claim as a precondition to an action in this court brought under the ADA.  Upon commencing his action in this court, Defendant promptly moved to compel arbitration on March 22, 2021 (Dkt. 5). Thus, Defendant has not engaged in any proceedings inconsistent with arbitration of Plaintiff's claim under the DRA as Defendant now requests.  Moreover, the two-year lapse of time from Defendant's awareness of Plaintiff's claim based on the July 2019 filing of Plaintiff's DHR complaint and the present time is directly attributable to Plaintiff, not Defendant.  It is inconsistent for Plaintiff to pursue his claim before the DHR requiring Defendant's compliance with DHR's investigation and to later interpose the attendant time in processing the complaint as a "defense" against Defendant's demand for arbitration in response to Plaintiff's action in this court.  Further, as discussed in connection with Plaintiff's estoppel argument, Discussion, *supra*, at 17-18, the administrative complaint Plaintiff filed with the DHR commenced an administrative investigation that could lead to further proceedings, against which Defendant could not

obtain injunctive relief, until a public hearing was held and the DHR then proceeded in

an adjudicating mode.  Accordingly, construing Plaintiff's contentions based on laches

and estoppel in opposition to Defendant's motion as also asserting Defendant's waiver

of arbitration pursuant to the DRA, Plaintiff's contention is without merit.  Further, as

discussed, Discussion, *supra*, at 14-15, such issues are for the arbitrator not the court.

In sum, on this record there is no material issue of fact requiring trial as to whether

Plaintiff agreed to the DRA and thus arbitration of Plaintiff's claims in this action, and

Plaintiff's assertions of laches and estoppel in opposition to Defendant's motion are

without merit nor has Defendant waived its right to enforcement of the DRA.

Finally, a stay of proceedings finding arbitration pursuant to FAA § 3 is warranted

if party seeking arbitration has not defaulted.  *See Salerno*, 2015 WL 6554977, at *6

(citing *Katz v. Cellco Ptship*, 794 F.3d 341, 346 (2d Cir. 2015).  Here, the court finds

Defendant has not defaulted on its obligations under the DRA, and that a stay is

therefore warranted.


## CONCLUSION

Defendant's motion, Dkt. 5, is GRANTED; the matter is STAYED pending

completion of arbitration in accordance with the DRA; a motion to confirm or vacate the

award pursuant to FAA §§ 9-10 shall be filed promptly after the award.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Dates:  February 9th, 2022
        Buffalo, New York